UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION


FRANKLIN H. MASON,

                    Petitioner,

v.                                        Case No. 3:06-cv-274-J-32HTS

WALTER A. MCNEIL,[1]
et al.,

                    Respondents.
_____


**ORDER**[2]

**I. Status**

        Petitioner Franklin H. Mason, an inmate of the Florida penal
system proceeding *pro se* and *in forma pauperis*, initiated this
action by filing a Petition for Writ of Habeas Corpus (hereinafter
Petition) (Doc. #1) pursuant to 28 U.S.C. § 2254 on March 24, 2006.
Petitioner challenges a 2003 state court (Seminole County, Florida)
judgment of conviction for robbery with a weapon on one ground:
ineffective assistance of appellate counsel.

────────────────

        [1] Pursuant to Rule 25(d)(1) of the Federal Rules of Civil
Procedure, Walter A. McNeil is substituted for James R. McDonough
as the proper party Respondent having custody over Petitioner.

        [2] Under the E-Government Act of 2002, this is a written
opinion and therefore is available electronically.  However, it has
been entered only to decide the matter addressed herein and is not
intended for official publication or to serve as precedent.

Respondents filed a Response to Petition (hereinafter Response) (Doc. #11) with exhibits in support of their Response.[3] Petitioner was instructed on how to properly respond to a motion to dismiss and/or for summary judgment. Court's Order to Show Cause and Notice to Petitioner (Doc. #8); <u>see</u> Court's Order (Doc. #10), filed June 27, 2006. While granted a sufficient amount of time to respond, Petitioner has not filed a Reply. This case is now ripe for review.

## II. Procedural History

On May 14, 2003, Petitioner Mason was charged with robbery with a deadly weapon. Ex. A at 19, Amended Information. The trial before a jury was conducted on August 4th and 7th, 2003. Ex. B, Transcript of the Jury Trial Proceedings (hereinafter Tr.). At the trial, Douglas Brandsema, a district manager for Family Dollar stores, testified that he worked as a manager for the store on December 22, 2002, the date of the robbery. <u>Id</u>. at 127. On that date, he recognized a male and female who came into the store. <u>Id</u>. at 127-28. He observed the female shoplift merchandise as the male (Petitioner Mason) waited by the front door. <u>Id</u>. at 128-31. Brandsema pursued the female as she exited the store. <u>Id</u>. at 132. After she dropped her purse that contained the stolen merchandise, he picked it up and took it back into the store. <u>Id</u>. He saw

---

[3] Respondents' exhibits will be hereinafter referred to as "Ex."

Petitioner Mason lunge at the assistant manager Daniel Linn who had
joined in the pursuit. Id. at 132-33.

Officer Jason Shor, as a patrol officer with the Sanford
Police Department, responded to the call at the Family Dollar
store. Id. at 144. He was stopped by the manager and told that
the assistant manager Daniel Linn was pursuing a black male
suspect. Id. at 148. He saw them crossing a nearby field at a
fast walking pace. Id. at 149. Linn emerged from the brush and
said that Petitioner was still in the woods and had a knife. Id.
at 151. Officer Shor called for Petitioner to exit the woods and
lie on the ground. Id. When Petitioner complied with the orders,
Officer Shor patted him down and recovered the knife from
Petitioner's pocket. Id. at 152.

Daniel Linn, the assistant manager, saw Petitioner and the
female shoplift at the store. Id. at 157-59. Linn followed
Petitioner as he attempted to leave on a bike. Id. at 162.
Petitioner "did take a swing" at Linn and then fled on foot. Id.
As Linn followed Petitioner, Petitioner "pulled a knife out of his
pocket and opened it up." Id. at 164. Petitioner displayed the
knife on four separate occasions as they walked, and Petitioner
repeatedly told Linn to stay back. Id. at 168. Linn continued to
follow Petitioner, but was careful to stay away from the knife.
Id. As he followed Petitioner, he saw Petitioner drop merchandise

from his person onto the ground.  Id. at 169-70.  He met Officer
Shor and told him what had transpired.  Id. at 172.

At the close of the State's case, defense counsel moved for a
judgment of acquittal.  Id. at 182-99.  Defense counsel argued that
while Petitioner had a common pocketknife in his pocket, he was not
using it in a manner likely to produce death or great bodily harm
and therefore he should not be charged with robbery with a deadly
weapon.  Id. at 183.  The court granted the motion for judgment of
acquittal in part regarding whether a pocketknife was a deadly
weapon, but ruled that the question of whether the knife was a
weapon could be decided by the jury.  Id. at 197-98.  The jury
found the Petitioner guilty of the lesser included offense of
robbery with a weapon.  Id. at 250; Ex. A at 51, Verdict; Ex. A at
52, Court Minutes; Ex. A at 53, Judgment.

Petitioner filed a motion to discharge trial counsel.  Ex. A
at 58-62.  After conducting a hearing on August 20, 2003, the trial
court denied the motion.  Id. at 64-71.  On October 15, 2003,
Petitioner was sentenced as a habitual felony offender to ten years
of imprisonment.  Id. at 113-17.

On March 23, 2004, Petitioner, through counsel, filed a brief
pursuant to Anders v. California, 386 U.S. 738 (1967).  Ex. C.
Counsel raised one ground: whether the trial court erred in
adjudicating and sentencing the appellant.  Id.  The State of
Florida filed a Notice of its intent to not file a response.  Id.

4

On July 13, 2004, the appellate court per curiam affirmed without issuing a written opinion. <u>Mason v. State</u>, 876 So.2d 1215 (Fla. 5th DCA 2004); Ex. C. The mandate was issued on July 30, 2004. Ex. C.

On or about November 30, 2004, Petitioner filed a *pro se* petition for writ of habeas corpus in the appellate court and alleged ineffective assistance of appellate counsel for failing to raise the following issues: the sufficiency of the evidence for his conviction for robbery with a weapon; the trial court's denial of defense counsel's proposed jury instruction on the use of a common pocket knife; the trial court's denial of the motion for judgment of acquittal; and whether Petitioner meets the criteria for habitualization under the statute. Ex. C. The State filed a response on January 12, 2005. Ex. D. The appellate court denied the petition on March 3, 2005. <u>Id</u>.

On or about April 5, 2005, Petitioner filed a *pro se* motion for post conviction relief pursuant to Fla. R. Crim. P. 3.850. Ex. F. The State filed a response. <u>Id</u>. The court denied the motion on June 22, 2005. <u>Id</u>. On October 25, 2005, the appellate court per curiam affirmed without issuing a written opinion. <u>Mason v. State</u>, 917 So.2d 204 (Fla. 5th DCA 2005); Ex. E. Petitioner's motion for rehearing was denied on December 9, 2005. Ex. E. The mandate was issued on December 29, 2005. <u>Id</u>.

Petitioner's Petition was provided to the prison officials at Avon Park Correctional Institution for mailing to the Court on March 21, 2006, and as a result thereof, the Petition was filed on March 24, 2006.[4]   Thus, the Petition is timely filed within the one-year period of limitations.  See 28 U.S.C. § 2244(d); Response at 5-6.

### III. Evidentiary Hearing

"In deciding whether to grant an evidentiary hearing, a federal court must consider whether such a hearing could enable an applicant to prove the petition's factual allegations, which, if true, would entitle the applicant to federal habeas relief."  Schriro v. Landrigan, 127 S.Ct. 1933, 1940 (2007) (citation omitted).  "It follows that if the record refutes the applicant's factual allegations or otherwise precludes habeas relief, a district court is not required to hold an evidentiary hearing."  Id.

This Court has carefully reviewed the record and concludes Petitioner is not entitled to an evidentiary hearing.   The pertinent facts of the case are fully developed in the record before the Court.  Smith v. Singletary, 170 F.3d 1051, 1054 (11th Cir. 1999).  Thus, the Court can "adequately assess [Petitioner's]

---

[4] Giving Petitioner the benefit of the mailbox rule, this Court finds that the Petition was filed on the date Petitioner handed it to the prison authorities for mailing to this Court (March 21, 2006).  See Houston v. Lack, 487 U.S. 266, 276 (1988).

claim[s] without further factual development." <u>Turner v. Crosby</u>, 339 F.3d 1247, 1275 (11th Cir. 2003), <u>cert</u>. <u>denied</u>, 541 U.S. 1034 (2004).  Therefore, an evidentiary hearing will not be conducted.

## IV.  Standard of Review

Since this action was filed after the effective date of the Antiterrorism and Effective Death Penalty Act of 1996, Pub.L. 104-132, 110 Stat. 1214 (hereinafter AEDPA), April 24, 1996, the Court will analyze Petitioner's claims under 28 U.S.C. § 2254(d), as amended by AEDPA.  <u>Nelson v. Alabama</u>, 292 F.3d 1291, 1294-95 (11th Cir. 2002), <u>cert</u>. <u>denied</u>, 538 U.S. 926 (2003); <u>Fugate v. Head</u>, 261 F.3d 1206, 1215 n.10 (11th Cir. 2001), <u>cert</u>. <u>denied</u>, 535 U.S. 1104 (2002); <u>Wilcox v. Florida Dep't of Corr.</u>, 158 F.3d 1209, 1210 (11th Cir. 1998), <u>cert</u>. <u>denied</u>, 531 U.S. 840 (2000).  Under AEDPA, however, the review "is 'greatly circumscribed and highly deferential to the state courts.' <u>Crawford v. Head</u>, 311 F.3d 1288, 1295 (11th Cir. 2002)." <u>Stewart v. Sec'y, Dep't of Corr.</u>, 476 F.3d 1193, 1208 (11th Cir. 2007).

The Eleventh Circuit has explained this deferential review:

> [Section] 2254(d) allows federal habeas relief
> for a claim adjudicated on the merits in state
> court only if the state court adjudication
> resulted in a decision that was:  "(1) . . .
> contrary to, or involved an unreasonable[5]

_____

[5] "The question under AEDPA is not whether a federal court believes the state court's determination was incorrect but whether that determination was unreasonable - a substantially higher threshold."  <u>Schriro v. Landrigan</u>, 127 S.Ct. 1933, 1939 (2007) (citing <u>Williams v. Taylor</u>, 529 U.S. 362, 410 (2000)).

> application of, clearly established Federal
> law, as determined by the Supreme Court of the
> United States; or (2) . . . based on an
> unreasonable determination of the facts in
> light of the evidence presented in the State
> court proceeding." 28 U.S.C. § 2254(d);
> <u>Marquard</u>, 429 F.3d at 1303. The phrase
> "clearly established Federal law," as used in
> § 2254(d)(1), encompasses only the holdings,
> as opposed to the dicta, of the United States
> Supreme Court as of the time of the relevant
> state court decision. <u>See</u> <u>Carey v. Musladin</u>,
> 549 U.S. —, 127 S.Ct. 649, 653, 166 L.Ed.2d
> 482 (2006) (citing <u>Williams v. Taylor</u>, 529
> U.S. 362, 412, 120 S.Ct. 1495, 1523, 146
> L.Ed.2d 389 (2000)); <u>Osborne v. Terry</u>, 466
> F.3d 1298, 1305 (11th Cir. 2006).

<u>Stewart</u>, 476 F.3d at 1208-09.

"AEDPA also requires federal habeas courts to presume the correctness of state courts' factual findings unless applicants rebut this presumption with 'clear and convincing evidence.' §2254(e)(1)." <u>Schriro</u>, 127 S.Ct. at 1939-40 (footnote omitted). This presumption of correctness applies equally to factual determinations made by state trial and appellate courts." <u>Bui v. Haley</u>, 321 F.3d 1304, 1312 (11th Cir. 2003) (footnote omitted) (citing <u>Sumner v. Mata</u>, 449 U.S. 539, 547 (1981)).

Finally, for a state court's resolution of a claim to be an adjudication on the merits, so that the state court's determination will be entitled to deference for purposes of federal habeas corpus review under AEDPA, all that is required is a rejection of the claim on the merits, not an opinion that explains the state court's rationale for such a ruling. <u>Wright v. Sec'y for the Dep't of</u>

8

Corr., 278 F.3d 1245, 1255 (11th Cir. 2002), cert. denied, 538 U.S. 906 (2003).   See Peoples v. Campbell, 377 F.3d 1208, 1227 (11th Cir. 2004), cert. denied, 545 U.S. 1142 (2005).   Thus, to the extent that Petitioner's claim was adjudicated on the merits in the state courts, it must be evaluated under the new § 2254(d).

## V. Ineffective Assistance of Appellate Counsel

In Strickland v. Washington, 466 U.S. 668 (1984), the United States Supreme Court articulated a two-pronged test for determining whether a defendant was denied constitutionally adequate assistance of counsel.   To establish a claim of ineffective assistance of counsel, first, "the defendant must show that counsel's performance was deficient . . . [which] requires showing that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment."   Id. at 687. Second, the defendant must show that counsel's deficient performance prejudiced him.   Id.

"The same standard applies whether [a court is] examining the performance of counsel at the trial or appellate level."   Eagle v. Linahan, 279 F.3d 926, 938 (11th Cir. 2001) (citing Matire v. Wainwright, 811 F.2d 1430, 1435 (11th Cir. 1987)).   To establish ineffective assistance of appellate counsel, Petitioner must show that (1) appellate counsel's performance was deficient, and (2) but for appellate counsel's deficient performance, Petitioner would have prevailed on appeal.   Shere v. Sec'y, Fla. Dep't of Corr., 537

F.3d 1304, 1310 (11th Cir. 2008) (citing <u>Smith v. Robbins</u>, 528 U.S. 259, 285-86 (2000) and <u>Strickland</u>, 466 U.S. 668).

To demonstrate that his appellate counsel's performance was deficient, Petitioner must show that his attorney's performance "fell below an objective standard of reasonableness." <u>Strickland</u>, 466 U.S. at 687. "In considering the reasonableness of an attorney's decision not to raise a particular claim, [a court] must consider 'all the circumstances, applying a heavy measure of deference to counsel's judgments.'" <u>Eagle</u>, 279 F.3d at 940 (quoting <u>Strickland</u>, 466 U.S. at 691). "Thus, '[a] fair assessment of attorney performance requires that every effort be made to eliminate the distorting effects of hindsight to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at that time.'" <u>Id</u>. (quoting <u>Strickland</u>, 466 U.S. at 689). The reasonableness of counsel's assistance is reviewed in light of both the facts and law that existed at the time of the challenged conduct. <u>Chateloin v. Singletary</u>, 89 F.3d 749, 753 (11th Cir. 1996); <u>see also</u> <u>Jones v. United States</u>, 224 F.3d 1251, 1257-58 (11th Cir. 2000) (noting that counsel's "failure to divine" a change in unsettled law did not constitute ineffective assistance of appellate counsel) (quoting <u>Sullivan v. Wainwright</u>, 695 F.2d 1306, 1309 (11th Cir. 1983)).

To determine whether Petitioner was prejudiced by his attorney's failure to raise a particular issue, the Court "must

decide whether the arguments the [Petitioner] alleges his counsel failed to raise were significant enough to have affected the outcome of his appeal." United States v. Nyhuis, 211 F.3d 1340, 1344 (11th Cir. 2000) (citing Miller v. Dugger, 858 F.2d 1536, 1538 (11th Cir. 1988)), cert. denied, 531 U.S. 1131 (2001).   "If [a court] conclude[s] that the omitted claim would have had a reasonable probability of success, then counsel's performance was necessarily prejudicial because it affected the outcome of the appeal." Eagle, 279 F.3d at 943 (citing Cross v. United States, 893 F.2d 1287, 1290 (11th Cir. 1990)).

## VI. Findings of Fact and Conclusions of Law

Petitioner claims that his appellate counsel was ineffective for failure to raise on direct appeal the following issue: the trial court's denial of the motion for judgment of acquittal.  As acknowledged by the parties, Petitioner raised this ineffectiveness claim in his state petition for writ of habeas corpus.  In the state petition, Petitioner alleged ineffectiveness for appellate counsel's failure to raise the following issues:  the sufficiency of the evidence for his conviction for robbery with a weapon,; the trial court's denial of defense counsel's proposed jury instruction on the use of a common pocket knife; the trial court's denial of the motion for judgment of acquittal; and whether Petitioner meets the criteria for habitualization under the statute.  Ex. C. However, in the Petition now before this Court, Petitioner only

11

challenges appellate counsel's failure to raise the trial court's denial of the motion for judgment of acquittal.   See Petition at 5(a)-5(c).

To the extent that the state court denied the petition on the merits,[6] this claim should be addressed applying the deferential standard for federal court review of state court adjudications, as required by AEDPA.   Upon a thorough review of the record and the applicable law, it is clear that Petitioner is not entitled to relief on the basis of this claim because the state court's adjudication of this claim was not contrary to clearly established federal law, did not involve an unreasonable application of clearly established federal law, and was not based on an unreasonable determination of the facts in light of the evidence presented in the state court proceedings.

Additionally, this claim is without merit.   As previously noted, on direct appeal, Petitioner's appellate counsel filed an Anders brief.   Ex. C.   Further, Petitioner was given the

---

[6] In response to the state petition, the State argues facial insufficiency and procedural bar and alternatively that the petition should be denied on the merits, and the state court denied the petition without issuing a written opinion. Ex. D. As previously stated, for a state court's resolution of a claim to be an adjudication on the merits, so that the state court's determination will be entitled to deference for purposes of federal habeas corpus review under AEDPA, all that is required is a rejection of the claim on the merits, not an opinion that explains the state court's rationale for such a ruling. Wright v. Sec'y for the Dep't of Corr., 278 F.3d 1245, 1255 (11th Cir. 2002), cert. denied, 538 U.S. 906 (2003).

opportunity to file a *pro se* brief, raising any issues that he wanted the court to address.  However, while he sought and received a motion for extension of time to file a *pro se* brief, he did not file a *pro se* brief.  Id.

When an Anders brief has been filed, the appellate court then assumes the responsibility of conducting a full and independent review of the record to discover any arguable issues apparent on the face of the record.  Jones v. State, 923 So.2d 486, 492 (Fla. 2006) (citations omitted).  If the court finds that the record supports any arguable claims, then the court must afford the indigent appellant the right to appointed counsel, and the court must allow the State an opportunity to file a brief on the arguable claims.  Id.  However, the appellate court must conduct its full and independent review of the record even if the indigent appellant chooses not to file a *pro se* brief.  Id.

Here, Petitioner argues that appellate counsel should have argued, on direct appeal, that the trial court erred in denying motion for judgment of acquittal.  At the close of the State's case, defense counsel moved for a judgment of acquittal.  See Tr. at 182-99.  Defense counsel argued that while Petitioner had a common pocketknife in his pocket, he was not using it in a manner likely to produce death or great bodily harm and therefore he

13

should not be charged with robbery with a deadly weapon.  Tr. at

183 (citing <u>Arroyo v. State</u>, 564 So.2d 1153 (Fla. 4th DCA 1990)).[7]

The State responded:

> [F]our times the Defendant turned around,
> displayed the knife, and his verbal

---

[7] In <u>Arroyo v. State</u>, 564 So.2d 1153 (Fla. 4th DCA 1990), the court stated:

> If, then, a "pocketknife" is expressly
> excluded from the term "weapon," does that
> mean that a pocketknife can never be a
> "weapon" or a "dangerous weapon" for purposes
> of applying statutes employing those terms. We
> think not and follow the lead of our sister
> court in holding that it depends upon the use
> made of the pocketknife and other facts
> involved in a particular case. The third
> district, in <u>State v. Nixon</u>, 295 So.2d 121
> (Fla. 3d DCA 1974), addressed the question
> whether a common pocket knife could be a
> "deadly weapon" since it was expressly
> excluded from the enumerated weapons in
> section 790.001(13). In answering that
> question affirmatively, the third district
> noted that the legislature exempted common
> pocketknives from the definition of weapons in
> chapter 790 so that citizens would not be
> charged with a crime when carrying such knives
> for their own convenience and for useful
> purposes unrelated to criminal activity. The
> third district further noted, however, that
> common pocketknives could be deadly weapons
> when used in a manner likely to produce death
> or great bodily harm.
>
> Thus, the pocketknife in this case could
> also be a dangerous weapon if it was used in a
> manner likely to produce death or great bodily
> injury. A review of the record indicates that
> such was not the case here.

<u>Id</u>. at 1154-55.

statements, don't make me do this to you[8], it
was obvious that he was using this weapon to
perpetuate that part of the robbery, and based
on his own threats, in a deadly manner.  That
is, if the victim had approached him closer,
he was going to use it based on what he said,
and that happened four times.

And I would point out to the Court that
what the Court has in front of it is not a
fingernail cleaner.  I mean, it's a pretty
substantial heavy-duty knife.  And based on
the other case, I think it's clearly a
question for the jury.

. . . .

If we didn't have, you know, the threats
that the Defendant made, it might be a
different situation in this case.  But he was
clearly using that in a manner that, based on
what he was saying, if the victim would have
approached him, he would have used it on him
and certainly would have caused great bodily
harm, it's a pretty substantial knife.

Id. at 189, 190-91.

The trial court granted the motion for judgment of acquittal
in part with respect to the issue of whether the pocketknife was a
deadly weapon.  Tr. at 187, 193-97 (relying on Bates v. State, 561
So.2d 1341 (Fla. 2nd DCA 1990) (stating the nut driver held by
defendant under a rag as he demanded money from the store clerk was
not a deadly weapon under the circumstances where the defendant
neither used nor threatened to use the nut driver in a violent way,
but merely stated that he was holding a gun) and discussing

_____

[8] See Tr. at 167 (victim's testifying that Petitioner said:
"Lord knows I don't want to have to do this to you, it's right
around Christmas.  Don't make me do this.").

15

<u>Williams v. State</u>, 651 So.2d 1242 (Fla. 2nd DCA 1995) (holding that the evidence was insufficient to establish that hot coffee constituted a weapon under the robbery statute), <u>rev</u>. <u>denied</u>, 694 So.2d 739 (Fla. 1997).[9]

However, the court ruled that, based on the evidence presented by the State, the question of whether the knife was a weapon should be decided by the jury.  Tr. at 197-98.  In instructing the jury, the trial judge informed the jury as follows:

> The first thing in the instructions is a copy of the pertinent portion of the information which I have amended slightly in order to reflect my ruling earlier.  It is now -- the Defendant is now charged with robbery with a weapon.

<u>Id</u>. at 234.  The jury was instructed that "[a] weapon is legally defined to mean any object which could be used to cause death or inflict serious bodily harm."  <u>Id</u>. at 238.  The jury found Petitioner guilty of the lesser included offense of robbery with a weapon.  <u>Id</u>. at 250; Ex. A at 51, Verdict; Ex. A at 52, Court Minutes; Ex. A at 53, Judgment.

The State had presented overwhelming evidence that Petitioner had the pocketknife in his hand and threatened Mr. Linn, the

---

[9] <u>But</u> <u>see</u> <u>Cassidy v. State</u>, 853 So.2d 594 (Fla. 5th DCA 2003) (stating there was sufficient evidence to make it a jury question whether the pocketknife wielded by the defendant in the robbery was a deadly weapon to support a conviction for robbery with a deadly weapon where the defendant displayed the open pocketknife to the store clerk and threatened to cut her throat), <u>rev</u>. <u>denied</u>, 865 So.2d 479 (Fla. 2004).

store's assistant manager, in an effort to get away from him and flee the crime scene.  There were four separate occasions when Petitioner turned around and displayed the knife to Linn, and Petitioner repeatedly told Linn to stay back.  Tr. at 164-68, 173. Linn continued to follow Petitioner, but fearful of the knife, he kept a safe distance from Petitioner.  Id. at 168, 179.  Based on this evidence, the issue of whether Petitioner's conduct constituted the lesser crime of robbery with a weapon was properly left to the trier of fact and warranted a denial of the motion for judgment of acquittal on the lesser crime.[10]  Based on the record before this Court, appellate counsel's performance in not raising this issue was not deficient.

For all of the previously-stated reasons, the Petition will be denied, and this case will be dismissed with prejudice.

Therefore, it is now

**ORDERED AND ADJUDGED:**

1.    The Petition (Doc. #1) is **DENIED**, and this action is **DISMISSED WITH PREJUDICE.**

---

[10] See Fla. Stat. § 812.13(2)(a) (robbery with a deadly weapon, a first degree felony punishable by life imprisonment); Fla. Stat. § 812.13(2)(b) (robbery with a weapon, a first degree felony); Fla. Stat. § 812.13(2)(c) (robbery, a second degree felony); see also Ex. A at 10, 19, 52, 250.

2.    The Clerk of the Court shall enter judgment denying the Petition and dismissing this case with prejudice.

3.    The Clerk of the Court shall close this case.

**DONE AND ORDERED** at Jacksonville, Florida, this 29th day of December, 2008.

TIMOTHY J. CORRIGAN
United States District Judge

sc 11/14
c:
Frankin Mason
Ass't Attorney General (Morris)

18